## JONES v. CONTINENTAL CASUALTY CO.*
### No. 4863.

Court of Appeal of Louisiana. Second Circuit.

Dec. 5, 1934.

Jos. S. Guerriero, of Monroe, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff held a sick benefit and accident policy in defendant company for which he paid an annual premium of $96, wherein defendant agreed to pay him monthly indemnity at the rate of $80 for a period not to exceed one year, during which the insured shall be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness.

He alleges that his occupation was that of brakeman on the Missouri Pacific Railway Company's lines, and that on or about September 5, 1932, he became afflicted with rheumatism of such severeness that he was totally and wholly disabled to perform work of any character or nature whatsoever, and was so afflicted and suffering when this suit was filed on May 25, 1933; that in September, 1932, he made demands on defendant to pay him the monthly payments provided in the policy, but was advised by it that he was not due any amount under the policy, because he had, subsequent to its issuance, executed and delivered to defendant a waiver wherein and whereby illness and disability from rheumatism was excepted and excluded therefrom; that he wrote defendant and advised its local agent that he had not signed or consented to such a waiver; and that, if his signature was affixed thereto, it was a forgery. He sues for one year's indemnity, or $960, alleging that his sickness and disability will continue for a year from the date he became disabled to do work. He makes a direct attack upon the waiver mentioned as being forged.

Defendant admits issuance to plaintiff of the insurance policy sued under, but denies generally all the other allegations of his pe-

---

tition, save that it is averred that on or about June 20, 1932, defendant received from plaintiff a waiver signed by him in the presence of J. R. Gilhula, its agent, which is made part of the policy sued on, and that under the terms of said waiver plaintiff agreed that no indemnity of any sort or amount would be due or payable to him or to any beneficiary under said policy for loss which results from rheumatism and certain other diseases therein named.

The demands of plaintiff were rejected by the lower court, and he appealed from the judgment dismissing his suit.

■ The only issue raised by the pleadings is as to whether the waiver referred to was signed by plaintiff or not. Counsel for plaintiff, in brief, takes the position that the waiver is invalid because executed without consideration. This subject is not mentioned in plaintiff's petition. The lack of consideration could not have been consistently raised by plaintiff, except possibly in the alternative. An unconditional direct attack on the validity of the waiver for lack of consideration would necessarily have admitted its execution.

■ We concur with the conclusions reached by the trial judge on the question of fact involved. The evidence fairly well establishes that the signature to the waiver is that of plaintiff and that he placed it thereon. Whether he did so knowingly may be questioned. That issue is not before us.

Plaintiff can read and write, but not very well. He admits that he often authorized a close colored friend, E. P. Ellis, to sign his name to important papers and to write letters for him. In May, 1932, he suffered from rheumatism and made demand on defendant for indemnity. He was paid $66.66 on that account on June 20th. It was on this date that the waiver in dispute was supposed to have been signed by plaintiff. This payment was made by defendant's representative, Gilhula, in the form of a draft in favor of plaintiff, drawn on defendant at Chicago, Ill., and, when delivered, as was the custom, plaintiff was required to sign, or rather is charged with having signed, a release to defendant from any further liability to him on account of the rheumatism theretofore ailing him. He denies positively that he signed the release. He admits, however, going to Gilhula's home to get the draft, and it is very reasonable to suppose, in fact to assume, that he did sign this release at the time. Gilhula testified that the release and waiver were both signed then, and that plaintiff then and there indorsed the draft. Prior to this occasion, Gilhula had been endeavoring personally, and through the agency of some of plaintiff's friends, to secure his signature to the waiver, but he positively refused to do so, with the declaration that he was paying for indemnity against loss from rheumatism and the other diseases named in the waiver.

When the payment of $66.66 was made to plaintiff on June 20, 1932, there was deducted therefrom an installment on the policy of $9.60. This was done in error, and on July 28, 1932, the amount was refunded to plaintiff and a receipt therefor taken. He admitted signing the receipt when interrogated by defendant's counsel, but, when questioned by the judge of the court, denied that he signed it. There can be no question that his signature in this instance is genuine. When the settlement was made on June 20th, it was in the nature of a compromise. On that day he is alleged to have signed a "Proposition for Settlement of Claim," and to have delivered it to Gilhula. This proposition, if accepted, was intended to finally settle his claim for indemnity then pending with defendant. He denies that he signed this "proposition." We are quite certain he did so. Gilhula, as defendant's agent, recommended acceptance thereof, and the claim was then and there settled on the basis of the proposal.

There are in the record several documents bearing admitted signatures of plaintiff. There are some documents in the record on which his genuine signature appears, but which he denies. We detect very little variation between the admitted signatures and that appearing on the waiver in question. The main and only essential difference is that the initial "C" between "Will" and "Jones" on the waiver is written thus, "$\mathcal{C}$," whereas in the cases where the signature is admittedly genuine it is written "C." The "Will" and "Jones" in every instance have the same appearance and characteristics. Plaintiff's signature, written six times on paper in court, does not materially vary from others in the record, including that to the waiver, except as regards the initial "C." On the "Proposition for Settlement of Claim," his signature appears thus, "Will $\mathcal{C}_0$. Jones," the same as it does on the waiver.

Many other comparisons with comments supporting our conclusion in the case could be made, but we deem same unnecessary.

The judgment appealed from is correct, and is hereby affirmed, with costs.